IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:19CR402** |
| v. | |
| JESSE L. CODY, | **MEMORANDUM** |
| | **AND ORDER** |
| Defendant. | |

This matter is before the Court on defendant Jesse L. Cody's ("Cody") post-conviction Motion for New Trial (Filing No. 97) pursuant to Federal Rule of Criminal Procedure 33.[1]  For the reasons stated below, Cody's motion is denied.

## I.    BACKGROUND

On November 4, 2021, a jury found Cody guilty of (1) sex trafficking Victim 1 by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1); (2) sex trafficking Victim 2 by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1); (3) persuading or coercing Victim 1 to travel in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2422(a); and (4) transporting Victim 1 in interstate commerce to engage in prostitution in violation of 18 U.S.C. § 2421(a).  Cody now seeks a new trial, arguing that Victim 1 may have been alerted to certain impeachment evidence against her, and that her alleged knowledge of such evidence denied him the right to a fair trial.  He further argues there was insufficient evidence to support his convictions.

The government called Victim 1 to testify on November 2, 2021, but did not finish questioning her until November 3, 2021.  On the evening of November 2, 2021, Cody's

---

[1]Cody does not expressly assert or renew the Rule 29 motion he made at trial.  Fed. R. Crim. P. 29(c).  To the extent he does with regard to his insufficiency of the evidence argument, it is denied for the same reasons stated at trial and as detailed below.

defense counsel ("defense counsel") discovered some of Victim 1's juvenile-court documents containing information that contradicted some of Victim 1's testimony. Specifically, Victim 1 testified on November 2, 2021, that she had lived with her foster parents for about two months prior to meeting Cody. She testified she met Cody in early June of 2019. Her juvenile-court documents reflected that she moved in with her foster parents on May 30, 2019, meaning she had only lived with her foster parents for a week or two before meeting Cody.

On the morning of November 3, 2021, defense counsel raised this issue during an evidentiary hearing outside the presence of the jury and Victim 1. Members of the public were sitting in the gallery, including Cody's mother and fiancé. Defense counsel notified the Court that he wanted to use those juvenile-court documents to impeach Victim 1's testimony during cross-examination. Defense counsel argued that Victim 1 was lying about her living situation and her whereabouts, which were also issues pertinent to some of Victim 1's testimony regarding Cody's sex-trafficking charges.

The Court permitted defense counsel to ask Victim 1 questions about the relevant time period when Victim 1 lived with her foster parents. Due to the sensitive nature of Victim 1's juvenile-court records and foster-care-related documents, some of which were sealed, the Court declined to allow defense counsel to present or use those physical documents for impeachment purposes, other than one highlighted sentence to refresh Victim 1's recollection.

After the Court specified which evidence it would and would not allow, it told counsel for the government that Victim 1 should not be given advance notice of the impeachment material prior to taking the witness stand. Counsel for the government confirmed it would not discuss those matters with Victim 1. Minutes later, on the morning of November 3, 2021, the jury returned to the courtroom and Victim 1 again took the stand. Defense counsel began his cross-examination of Victim 1 and addressed the discrepancy in her testimony. When questioned, Victim 1 stated she was not sure how long she had

2

lived with her foster parents but she believed she moved in with them sometime in May 2019.  Defense counsel pressed her for a more specific date.  When Victim 1 was unable to provide any more details, defense counsel refreshed her recollection with a document.  Victim 1 then recalled that she moved in with her foster parents on May 30, 2019.  Her final testimony was that she lived with her foster parents for roughly one or two weeks before meeting Cody, not two months as she previously stated.

After trial, Cody's fiancé and mother told defense counsel they saw a law-enforcement officer (who was sitting near them in the gallery) with a cell phone during the evidentiary hearing.  Cody's fiancé and mother report seeing the law-enforcement officer receive or send what appeared to be a text message.  Shortly after, they saw the law-enforcement officer leave the courtroom and reenter with Victim 1.  Neither witness could see the contents of the law-enforcement officer's phone, but they "believe" she texted Victim 1 to give her a "heads up" about the impeachment evidence.

Counsel for the government identified the law-enforcement officer as Federal Bureau of Investigation Special Agent Amber Mann ("Special Agent Mann"), who was in the gallery for purposes of assisting them with witnesses and ensuring witness availability for testimony.  Special Agent Mann relayed she does not recall sending or receiving a text message during that time, but she did step out of the courtroom to tell Victim 1 she was to take the stand again.  Special Agent Mann states she had no substantive conversation with Victim 1 and did not discuss the impeachment evidence.

## II.    DISCUSSION

Fed. R. Crim. P. 33 states "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Cody argues that based on newly discovered evidence, it is clear he was denied a fair trial.  He also argues there was insufficient evidence to support a conviction.  Rule 33 motions are generally "disfavored," and courts should exercise their discretion to grant a new trial "sparingly and with caution." *See United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

3

### A.    Newly-Discovered Evidence

To support his motion for a new trial, Cody first argues he presents newly discovered evidence. That is, he believes Victim 1 could have been notified of potentially impeaching evidence regarding the length of time she lived with her foster parents, and her "extraordinary timely correction of otherwise impeachable testimony created [sic] situation that denied the Defendant his constitutional right to a fair and impartial trial."

> To obtain a new trial on the basis of newly discovered evidence, [courts] require the moving party to demonstrate that "(1) the evidence is in fact newly discovered since trial; (2) diligence on his part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial."

*United States v. Bell*, 761 F.3d 900, 911 (8th Cir. 2014) (quoting *United States v. Myers*, 503 F.3d 676, 682-83 (8th Cir. 2007)).  The government argues Cody's so-called newly discovered evidence is merely impeaching, not material, and insignificant to the verdict.

Whether Victim 1 lived with her foster parents for one week or two months did not go to an element of the crimes charged, and Cody admits any such evidence was only for impeachment purposes.  Even if Victim 1 was given notice of the impeaching evidence, defense counsel was still given the opportunity to cross-examine her.  He attempted to undermine her credibility by pointing out inconsistencies in her earlier testimony, and Victim 1 acknowledged she did not recall the exact timeline she lived with her foster parents.  When defense counsel asked about that time period, he needed to refresh Victim 1's recollection.  In addition, the evidence that Special Agent Mann texted Victim 1 about the impeachment evidence is controverted and, at best, pure speculation by two persons closely associated with Cody.  Cody has not met his burden to show he is entitled to a new trial on these grounds.

4

### B.     Insufficient Evidence

Cody also asserts there was insufficient evidence to support his conviction.   In support, he points out "discrepancies" in the testimonies of Victim 1 and Victim 2 and argues no reasonable jury could have found them credible.   New-trial motions "based on the weight of the evidence are generally disfavored." *United States v. Camacho*, 555 F.3d 695, 705 (8th Cir. 2009).   "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand," *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).   There is no risk of a miscarriage of justice in this case.

The government presented ample electronic evidence, business records, cell phone records and text messages, and testimony from law enforcement that corroborated the testimony of Victims 1 and 2.   There was more than sufficient evidence for the jury to conclude Cody was guilty.   Despite minor differences in their testimonies—which were not material to the charges and pointed out by defense counsel during trial—the Court found Victim 1 and 2 to be credible witnesses.   *See United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980) (noting in a Rule 33 motion, the Court "may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses").   Given the great weight of the evidence to support Cody's convictions, the Court will not grant him a new trial.

Accordingly, defendant Jesse L. Cody's Motion for New Trial (Filing No. 97) is denied.

IT IS SO ORDERED.

Dated this 29th day of December 2021.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

5