IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE L. CODY,<br><br>Defendant. | **8:19CR402**<br><br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court following an evidentiary hearing on defendant Jesse L. Cody's ("Cody") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 156). After careful review, that motion is denied.

## I.    BACKGROUND

On July 22, 2021, a federal grand jury returned a Superseding Indictment (Filing No. 35) charging Cody with two counts of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1), one count of knowingly persuading or convincing an individual to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2422(a), and one count of knowingly transporting an individual in interstate commerce with the intent that they engage in prostitution or other unlawful sexual activity, in violation of 18 U.S.C. § 2421(a). Then-Assistant United States Attorney Lesley A. Woods ("Woods") was the lead prosecutor in the case.[1] Cody proceeded to trial with appointed counsel Matthew J. Knipe ("Knipe") (Filing Nos. 7, 81, 103).

At trial, two young women identified as Cody's victims ("A.M." and "J.R.") testified that in the summer of 2019, he arranged for them to have sex for money in hotels

---

[1]Woods was appointed United States Attorney for the District of Nebraska effective September 6, 2025.

in Nebraska and several neighboring states.  He promised them thousands of dollars—even millions—but paid them very little.  J.R. testified Cody beat her, choked her, raped her, and threatened her with arrest to keep her working.

After a four-day trial, the jury found Cody guilty of all four counts (Filing No. 90). Cody moved for a new trial (Filing No. 97) pursuant to Federal Rule of Criminal Procedure 33, arguing (1) J.R. "was potentially alerted to impending impeachment evidence" and (2) there was "insufficient evidence to convict" him because "[n]o reasonable jury could have found" either of his victims to be credible witnesses.  The Court denied the motion (Filing No. 105).

Before sentencing, Cody, through counsel, moved (Filing No. 103) the Court to appoint counsel to represent him because he was "without funds to continue to pay for private counsel."  Knipe advised the Court he was willing to continue representing Cody under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  The magistrate judge granted Cody's request and appointed Knipe (Filing No. 108).

Also at Cody's request, Knipe moved to withdraw about two weeks later (Filing No. 110).  The magistrate judge granted the motion and appointed Julie A. Frank ("Frank") to represent him under the CJA (Filing No. 117).

On July 26, 2022, the Court sentenced Cody to 192 months imprisonment on each of the first two counts, 188 months on the third count, and 120 months on the fourth count, all to run concurrently (Filing No. 134).  The Court also sentenced him to concurrent terms of 5 years of supervised release on each count.

Cody appealed his conviction on multiple grounds.  *See United States v. Cody*, 76 F.4th 1042, 1045 (8th Cir. 2023).  He first unsuccessfully argued that "the government violated his due process right to the disclosure of exculpatory or impeachment material under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose [one victim's] juvenile court records."  *Cody*, 76 F.4th at

2

1045.  He also challenged the Court's denial of his new-trial motion and the sufficiency of the evidence for his conviction for sex-trafficking A.M.  *See id.* at 1045-46.  Based on the evidence adduced at trial, the Eighth Circuit affirmed Cody's convictions, *see id.*, and summarily denied his petition for a panel rehearing, *see United States v. Cody*, No. 22-2602, 2023 WL 6818625, at *1 (8th Cir. Oct. 17, 2023).

On January 22, 2025, Cody moved to vacate, set aside, or correct his sentence pursuant to § 2255.  He asserted Knipe and Frank provided ineffective assistance of counsel at every stage of these proceedings.  He further contended prosecutorial misconduct tainted his trial.

On initial review (Filing No. 157), the Court decided Cody's motion warranted a government response.  *See* 28 U.S.C. § 2255(b) (requiring further review and a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts (same).  In light of that response, which relied heavily on sworn declarations the government obtained from Knipe and Frank (Filing Nos. 172-1, 172-2), the Court appointed counsel to represent Cody and set his § 2255 motion for an evidentiary hearing.

On November 19, 2025, Cody, through counsel, moved for leave to withdraw his allegations of ineffective assistance of counsel as to Frank and prosecutorial misconduct by the government (Filing No. 192).  The Court granted that motion (Filing No. 193).

Over two days in March 2026, the Court held an evidentiary hearing on Cody's remaining allegations that Knipe provided ineffective assistance before and during trial.  Cody attended by phone but did not testify.  Knipe testified as a government witness and endured a pointed cross-examination by Cody's appointed counsel, Assistant Federal Public Defender Michael J. Hansen ("Hansen").  Among other things, Hansen thoroughly questioned Knipe about his alleged failure to (1) investigate J.R. and effectively use

Nebraska's JUSTICE search system to search juvenile-court records, (2) argue disputed elements of § 1591(a), (3) communicate with Cody, particularly with regard to the government's first plea offer, and (4) present exculpatory evidence and effectively cross-examine witnesses at trial.

Denise E. Frost ("Frost"), an experienced defense attorney, testified as an expert witness for Cody, variably stating what she would have done had she represented Cody, identifying perceived deficiencies in Knipe's representation, and opining as to what any reasonably competent criminal-defense lawyer would have done. The government consistently objected that Hansen's questions ranged far beyond the issues raised in Cody's motion and that Frost's testimony was rife with improper legal conclusions. On cross, the government also challenged the substance of and underlying basis for Frost's testimony.

The Court generally took the contested evidence for what it was worth, affording Cody some leeway while keeping the government's objections in mind. At the close of the evidence, Hansen proffered that an additional defense witness who was not available for the hearing, J.R.'s mother, would have testified at the hearing and at trial that J.R. was not a truthful person and had a character for untruthfulness at the time she testified at trial. *See* Fed. R. Evid. 608(a). The Court adjourned the hearing to allow that defense witness to testify at a later time, but the parties later informed the Court that further proceedings were unnecessary.

The matter is now fully briefed and ready for decision.

## II.   DISCUSSION

### A.   No Ineffective Assistance of Counsel

As a criminal defendant, Cody has a constitutional right to "the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Garza v. Idaho*, 586 U.S. 232, 237 (2019). That right attaches "at or after the initiation of adversary judicial proceedings

4

against the defendant," *United States v. Gouveia*, 467 U.S. 180, 187 (1984), and "extends to the first appeal of right," *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

For that right to have meaning, it must include "the right to the effective assistance of counsel." *Garza*, 586 U.S. at 237 (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Strickland*, 466 U.S. at 688)).

"*Strickland* sets a 'high bar' for unreasonable assistance." *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (quoting *Buck v. Davis*, 580 U.S. 100, 118 (2017)). Counsel's performance is deficient if they "made errors so serious that [they were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Collins v. United States*, 28 F.4th 903, 906 (8th Cir. 2022).

The Court's review of counsel's performance is highly deferential. *See Strickland*, 466 U.S. at 689. In conducting that review, the Court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment," *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006), and strives "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689. Counsel's performance is not deficient unless it falls "below an objective standard of reasonableness" measured against "prevailing professional norms." *Id.* at 688.

To prove prejudice, Cody "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Ford v. United States*, 917 F.3d

5

1015, 1021 (8th Cir. 2019) (quoting *Strickland*, 466 U.S. at 693); *accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (explaining that fundamental fairness is the focus of *Strickland*'s prejudice prong).

In his motion, Cody contends Knipe was unconstitutionally ineffective both before and during trial. Leading up to trial, he faults Knipe for failing to (1) "investigate/lying about hiring an investigator," (2) argue "the invalidity of the Superseding Indictment," (3) "object to joindering [sic] of [o]ffenses," (4) "Argue/Preserve the Ambiguity or Disputed Elements of 18 U.S.C. § 1591(a)(1)[] and 18 U.S.C. § 2422(a)," (5) communicate, (6) "prevent a vindictive prosecution," and (7) "request exculpatory evidence from Prosecutor." Cody also generically complains of "[m]ultiple Brady violations" and "[p]rejudiced representation."

Shifting to his trial, Cody argues along the same lines that Knipe (1) allowed perjury, fraudulent information, and prosecutorial misconduct, (2) failed to present exculpatory evidence, (3) did not object to the government's motion in limine based on Federal Rule of Evidence 412, (4) failed to object "to a Violation of the Advocate-Witness Rule under Nebraska Bar Rules," (5) did not investigate or present "evidence of Officer and State Prosecutors Misconduct," (6) failed to object "to Due Process violations from new accusations, contrary accusations, made on the stand," and (7) did not adequately investigate or address witness tampering related to his unsuccessful motion for a new trial (Filing Nos. 97, 105). Cody also wanted Knipe to move the Court to reconsider its denial of his post-trial motion.[2]

As noted above, Cody formally withdrew his claims based on Frank's performance and prosecutorial misconduct. And at the evidentiary hearing, Hansen refined Cody's remaining arguments to focus on what he sees as Knipe's deficient communication during plea negotiations, failure to adequately investigate J.R. and call her mother as an

---

[2]When Knipe withdrew (Filing Nos. 110, 117), Cody filed a *pro se* motion to reconsider (Filing Nos. 112, 122), which the Court denied (Filing No. 125).

impeachment witness, and lackluster defense of the sex-trafficking charges based on § 1591(a)(1). To cover all the open bases, the Court will touch on all of Cody's remaining claims, even as they relate to withdrawn or tertiary claims, with special attention to those claims pressed at the hearing.

In the Court's view, none of Cody's allegations raise a viable ineffective-assistance claim. Let's start with *Brady*. Cody raised that issue on direct appeal and lost. *See Cody*, 76 F.4th at 1045. The same is true for his allegations of witness tampering. *See id.* at 1046. He can't revisit those same claims here. *See Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Id.* (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)).

As to his assertion that Knipe "allowed" multiple *Brady* violations, he fails to show that the government withheld material exculpatory evidence, let alone that his counsel was ineffective in failing to obtain it or—even worse—somehow "complicit in Prosecutorial Misconduct" or "working with the Prosecutor" as he baldly contends. *See United States v. Smart*, 60 F.4th 1084, 1096 (8th Cir. 2023) ("A *Brady* violation is established by showing the undisclosed 'evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995))). Indeed, Cody says Knipe asked for alleged exculpatory evidence, but the government lied and said it did not exist. That does not show ineffective assistance.

Cody also fails to articulate a credible basis for Knipe to have fruitfully challenged the validity of the Superseding Indictment, the clear scope of § 1591(a)(1), the joinder or duplicity of his charges, the Court's Rule 412 ruling, or the propriety of the case agent testifying despite sitting at counsel table during trial. Again, Cody unduly relies on unsound legal theories and unsubstantiated allegations of fraud, vindictiveness, and subterfuge. *See generally* Fed. R. Crim. P. 7, 12, 14; Fed. R. Evid. 412, 615; Neb. Ct. R. of Prof. Cond. § 3-503.7 (Lawyer as a witness); *United States v. Sykes*, 977 F.2d 1242,

1245 (8th Cir. 1992) ("The decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion."); 18 U.S.C. § 1591(a)(1); *United States v. Biancofiori*, 94 F.4th 651, 653 (7th Cir.), *cert. denied*, 145 S. Ct. 307 (2024) (explaining that under § 1591(a), "trafficking of a minor [is] an alternative to trafficking of 'a person' by 'force, threats of force, fraud, coercion . . . or any combination of such means'"); *accord United States v. Lazzaro*, 129 F.4th 514, 527 (8th Cir. 2025).

Despite what Cody might think, Knipe was under no obligation to make frivolous objections or raise meritless arguments based on Cody's misunderstanding of the law. *See Sittner v. Bowersox*, 969 F.3d 846, 853 (8th Cir. 2020) ("Failure to raise a meritless objection cannot support a claim of ineffective assistance."); *Thai v. Mapes*, 412 F.3d 970, 979 (8th Cir. 2005) (deciding the defendant's "counsel was not ineffective for failing to make [a factually meritless] argument, and his counsel's trial strategy cannot be challenged on the basis of a meritless claim").

Cody clearly would have liked Knipe to investigate, communicate, and object more. At the hearing, Hansen explored the evolution of Knipe's defense strategy and whether Knipe adequately advised Cody about the original plea offer and the risk of additional charges if the government were to extract information from his phone. He also questioned Knipe's reasons for his decisions with respect to (1) investigating J.R. and attacking her credibility, (2) cross-examining J.R. and A.M. at trial, and (3) failing to challenge the second element of the § 1591(a) charges in his closing argument. To drive the point home, Frost extensively opined that Knipe's representation was deficient in all those ways and more. In her view, there was much more he should have done.

Knipe holds a different view. Testifying about his representation of Cody in detail at the hearing and in his declaration, Knipe acknowledged the possibility of other options but defended his strategic decisions under the circumstances. He explained that early in the case, he obtained full discovery pursuant to Federal Rule of Criminal Procedure 16 and

reviewed it with Cody. As the case progressed, they thoroughly discussed Cody's thoughts about hiring an investigator and obtaining additional evidence, including Cody's bank records. Knipe stated he listened to Cody's suggestions, acknowledged his concerns about perjury, exculpatory evidence, and prosecutorial misconduct. Knipe added that he routinely explained pertinent legal distinctions to Cody and described potential flaws and drawbacks in Cody's suggestions.

When asked about the plea offers, Knipe testified that he explained the pros and cons of pleading guilty, but that Cody knowingly rejected them, preferring to go to trial. Though admittedly not perfect, Knipe testified he consistently communicated with Cody about his case and gave sound reasons for the strategic decisions he made. *See Strickland*, 466 U.S. at 690-91 (explaining "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Knipe's account is consistent with what the Court observed about his performance before and during trial, including with respect to his efforts to impeach J.R. based on his review of her juvenile records and to address with the Court what Cody believed might be witness tampering. Though other defense counsel might have made different choices, "[t]here are countless ways to provide effective assistance in any given case." *Id.* at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way.").

Under *Strickland*, Knipe benefits from "a strong presumption that [his] conduct falls within the wide range of reasonable professional assistance" and may be considered a sound strategy. *Id.* Cody has not overcome that presumption. *See Dunn v. Reeves*, 594 U.S. 731, 733-34 (2021) (per curiam) ("[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." (quoting *Burt v. Titlow*, 571 U.S. 12, 23 (2013))). Nor has he shown "a reasonable probability that, but for [Knipe's] unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694; *accord Sorensen v. United States*, 138 F.4th 1096, 1099-1100 (8th Cir. 2025).

One last thing about Cody's claims bears mentioning. Convinced that different questions or evidence would have impeached his victims and exonerated him, Cody accuses Knipe and his firm of being prejudiced against him from the start because he "did not deserve a defense." In response, Knipe denies any knowledge of Cody's accusations of prejudice, vindictiveness, secret or doctored evidence, fraud, and perjury. Cody offers nothing to contradict Knipe's steadfast denial or to otherwise support Cody's various claims of nefarious conduct.

### B.    No Certificate of Appealability

Section 2253(c)(1)(B) bars Cody from appealing the Court's denial of § 2255 motion unless he first obtains "a certificate of appealability." *See also* Fed. R. App. P. 22(b)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Such a certificate will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make that showing, Cody "must demonstrate that reasonable jurists would find the [Court's] assessment of [his] constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because he hasn't, no certificate will issue here.

Based on the foregoing,

IT IS ORDERED:

1.    Defendant Jesse L. Cody's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Filing No. 156) is denied.

2.    No certificate of appealability will issue.

3.    The Court will enter a separate judgment.

Dated this 4th day of May 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge